QUINN EMANUEL URQUHART & SULLIVAN LLP
Harry A. Olivar, Jr. (SBN 143089)
harryolivar@quinnemanuel.com
Jeremy D. Andersen (SBN 227287)
jeremyandersen@quinnemanuel.com
Razmig Y. Izakelian (SBN 292137)
razmigizakelian@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for OHP-CDR, LP, Old Hickory Fund I GP, LLC, Old Hickory Fund I GP, LP, Purchase Co80, LLC, Adam Blum, and Daniel Young*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>Adv. Proc. No. 8:26-ap-01007-SC |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>Plaintiffs<br><br>v.<br><br>OHP-CDR, LP (f/k/a OHP-LPG, LP), a Delaware Limited Partnership; Old Hickory Fund I GP, LLC, a Delaware limited liability Company; Old Hickory Fund I GP, LP, a Delaware Limited Partnership; PurchaseCo80, LLC, a Delaware limited liability Company; Adam Blum, an individual; Daniel Young, an individual,<br><br>Defendants. | **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT**<br><br>**Hearing Date and Time**<br><br>Date: May 6, 2026<br><br>Time: 11:00 a.m.<br><br>Location:  411 W Fourth Street, Courtroom 5C, Santa Ana, CA 92701 or via ZoomGov |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

**NOTICE IS GIVEN** that, on March 16, 2026, Defendants OHP-CDR, LP ("OHP-CDR"), PurchaseCo80, LLC ("PurchaseCo"), Old Hickory Fund I GP, LLC, Old Hickory Fund I GP, LP, Adam Blum, and Daniel Young (collectively, the "Defendants"), filed with the United States Bankruptcy Court, Santa Ana Division, located at 411 West Fourth Street, Santa Ana, California 92701, the Honorable Scott C. Clarkson, United States Bankruptcy Judge, presiding, this Notice of Motion and Motion to Compel Arbitration or, in the Alternative, Dismiss the Amended Complaint (the "Motion" and "Amended Complaint") [ECF 11] filed by Richard A. Marshack, in his capacity as the trustee of the LPG Liquidation Trust ("Trustee").

**NOTICE IS FURTHER GIVEN THAT** the Motion is made pursuant to 9 U.S.C. § 1 et al., Federal Rule of Bankruptcy Procedure 7012, and Federal Rule of Civil Procedure 12 on the grounds that the claims in the Amended Complaint are subject to mandatory arbitration, the Court does not have post-confirmation jurisdiction over the claims asserted in the Amended Complaint, and the Amended Complaint fails to plausibly plead a right to relief.

**NOTICE IS FURTHER GIVEN THAT** the Motion is based on (a) this Notice of Motion, (b) the Memorandum of Points and Authorities, (c) the pleadings on file in the Debtor's bankruptcy case and related adversary proceedings of which the Court is requested to take judicial notice, and (d) such other pleadings and evidence as may be properly submitted in connection with the Motion.

**NOTICE IS FURTHER GIVEN THAT**, pursuant to Local Bankruptcy Rule 9013-1(f)(1), any response and request for hearing must be (i) in writing and include a complete written statement of all reasons in opposition thereto, and (ii) filed with the Court and served on the Defendants and their counsel at the address set forth above, and the Office of the United States Trustee at 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701, no later than 14 days before the date designated above for the hearing.

-1-

**NOTICE IS FURTHER GIVEN THAT**, pursuant to LBR 9013-1(h), the failure to file and serve a timely response to the Motion or request a hearing on the Motion may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

DATED: March 16, 2026          Respectfully submitted,

By  */s/ Razmig Y. Izakelian*
    Harry A. Olivar, Jr.
    Jeremy D. Andersen
    Razmig Y. Izakelian

    *Attorneys for OHP-CDR, LP, Old Hickory Fund I GP, LLC, Old Hickory Fund I GP, LP, Purchase Co80, LLC, Adam Blum, and Daniel Young*

-2-

# TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................................................1

BACKGROUND FACTS AND ALLEGATIONS OF THE AMENDED COMPLAINT ...............3

LEGAL STANDARD .......................................................................................................7

ARGUMENT .................................................................................................................8

I.    THE COURT SHOULD REQUIRE THE TRUSTEE TO ARBITRATE THE ASSERTED CLAIMS ...............................................................................................8

A.    The Court Must Compel Arbitration Because There Is an Agreement to Arbitrate and the Trustee's Claims Fall Within the Scope of the Arbitration Clauses ............................................................................8

1.    Valid Agreements to Arbitrate Exist ...............................................9

2.    The Trustee's Claims—Brought on Behalf of LPG—Fall Within the Scope of the Arbitration Clauses ....................................9

3.    The Trustee Cannot Avoid Arbitration by Alleging the Agreements Are "Illegal" .............................................................10

4.    The Trustee Cannot Avoid Arbitration by Referencing LPG's Bankruptcy ........................................................................11

II.    THE COURT DOES NOT HAVE POST-CONFIRMATION JURISDICTION ...............13

A.    The Court Does Not Have "Arising in" Jurisdiction ................................13

B.    The Court Does Not Have "Related-to" Jurisdiction ...............................14

III.    THE AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM ................16

A.    All of the Claims Are Barred by the Doctrine of *In Pari Delicto* ............16

B.    The Court Must Dismiss Count I Because the Trustee, Standing in LPG's Shoes, Cannot Rescind These Contracts ...............................................19

C.    The Trustee Lacks Standing to Assert Counts II-IV Because He Predicates These Counts on Alleged Injuries to LPG's Customers, Not LPG ..........21

D.    The Court Must Dismiss Counts V and VI Because There Is No Cause of Action for "Deepening Insolvency" ........................................................23

CONCLUSION ..............................................................................................................23

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*In re 19 Court Street Assocs., LLC*,
190 B.R. 983 (Bankr. S.D.N.Y. 1996) ................................................................................. 19

*In re Albert-Sheridan*,
2025 WL 3079967 (Bankr. C.D. Cal. Oct. 30, 2025) ........................................................... 13

*American Exp. Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) ............................................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 8

*Associated Gen. Contractors v. Metro. Water Dist.*,
159 F.3d 1178 (9th Cir. 1998) ............................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................... 8

*In re Blanchard*,
545 B.R. 18 (Bankr. C.D. Cal. 2016) ................................................................................... 13

*In re BWI Liquidating Corp.*,
437 B.R. 160 (Bankr. D. Del. 2010) .................................................................................... 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000).............................................................................................. 9

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994)................................................................................................... 8

*Cnty. of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022)................................................................................................ 15

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) ................................................................................................................. 7

*In re Cytodyn of N.M., Inc.*,
374 B.R. 733 (Bankr. C.D. Cal. 2007) ................................................................................. 13

*In re Dixon*,
428 B.R. 911 (Bankr. N.D. Ga. 2010) .................................................................................. 12

*Don King Prods./Kingvision v. Lovato*,
911 F. Supp. 419 (N.D. Cal. 1995) ...................................................................................... 21

*In re ECS Refining, Inc.*,
625 B.R. 425 (Bankr. E.D. Cal. 2020) ............................................................................... 22

*In re The Fairchild Corp.*,
452 B.R. 525 (Bankr. D. Del. 2011) .................................................................................. 14

*George v. eBay, Inc.*,
71 Cal. App. 5th 620 (2021) .............................................................................................. 21

*Green Tree Financial Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ........................................................................................................ 9, 11

*Greyson Law Center P.C. et al. v. Marshack (In re The Litigation Practice Group, P.C.)*,
Case No. 24-2074-FMO (C.D. Cal. Mar. 13, 2026) .......................................................... 18

*In re Heller Ehrman LLP*,
461 B.R. 606 (Bankr. N.D. Cal. 2011) ............................................................................... 14

*In re Hoku Corp.*,
554 B.R. 901 (Bankr. D. Idaho 2016) ................................................................................ 22

*Hoskins v. Citigroup, Inc. (In re Viola)*,
469 B.R. 1 (B.A.P. 9th Cir. 2012) ..................................................................................... 21

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .............................................................................................................. 8

*In re Jewelcor Inc.*,
150 B.R. 580 (Bankr. M.D. Pa. 1992) ................................................................................ 15

*Kelter v. Forrest*,
2008 WL 11342628 (C.D. Cal. July 2, 2008) .................................................................... 20

*In re Kmart Corp.*,
359 B.R. 189 (Bankr. N.D. Ill. 2005) ................................................................................. 15

*In re KSL Media Inc.*,
2016 WL 3549166 (Bankr. C.D. Cal. June 21, 2016) ........................................................ 16

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*,
313 B.R. 9 (D. Conn. 2004) ............................................................................................... 15

*In re Litigation Practice Group P.C.*,
674 B.R. 884 (Bankr. C.D. Cal. 2025) ............................................................................... 21

*Marshack v. Bayrooti*,
Adv. P. No. 8:24-ap-1068-SC, ECF 9 (Bankr. C.D. Cal. July 12, 2024) ............................ 20

*Marshack v. JGW Solutions, LLC*,
    Adv. P. No: 8:23-ap-01148-SC, ECF 72 (Bankr. C.D. Cal. March 27, 2025)........................ 16

*Marshack v. Marich Bein LLC et al.*,
    Adv. P. No. 24-ap-01040-SC, ECF 129 (Bankr. C.D. Cal. July 2, 2025)............................... 18

*In re Mintze*,
    434 F.3d 222 (3d Cir. 2006) ............................................................................................. 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................................................... 9

*In re Mohammed*,
    2021 WL 2373632 (Bankr. C.D. Cal. June 9, 2021)............................................................. 13

*In re Mortg. Fund '08 LLC*,
    527 B.R. 351 (N.D. Cal. 2015)............................................................................................ 17

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ....................................................................................................... 7, 12

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
    267 F.3d 340 (3d Cir. 2001)............................................................................................... 17

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984)............................................................................................... 14

*In re Pegasus Gold Corp.*,
    394 F.3d 1189 (9th Cir. 2005)............................................................................................ 14

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    133 Cal. App. 4th 658 (2005)............................................................................................. 16

*Pfeiffer v. Dominion Management of Delaware t/a Cash Point (In re Pfeiffer)*,
    2011 WL 4005504 (Bankr. E.D. Pa. Sept. 8, 2011) ............................................................. 8

*In re Phelps Techs, Inc.*,
    238 B.R. 819 (Bankr. W.D. Mo. 1999).............................................................................. 15

*In re Plaza Mortg. and Fin. Corp.*,
    187 B.R. 37 (Bankr. N.D. Ga. 1995).................................................................................. 22

*In re Rarities Group, Inc.*,
    434 B.R. 1 (D. Mass. 2010).............................................................................................. 12

*In re Ray*,
    624 F.3d 1124 (9th Cir. 2010).......................................................................................... 13

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................................ 10

*Shearson/American Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) ........................................................................................................... 7, 11

*In re Singer Co. N.V.*,
    2001 WL 984678 (S.D.N.Y. Aug. 27, 2001) ........................................................................ 12

*In re Singh*,
    2015 WL 1887939 (Bankr. E.D. Cal. Apr. 22, 2015) ........................................................... 17

*Smith v. Arthur Andersen, LLP*,
    421 F.3d 989 (9th Cir. 2005)..........................................................................................21, 22

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ............................................................................................................ 12

*In re Solyndra, LLC*,
    2015 WL 6125246 (Bankr. D. Del. Oct. 16, 2015).............................................................. 16

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .................................................................................................................. 8

*Stateside Machinery Co., Ltd. v. Alperin*,
    591 F.2d 234 (3rd Cir. 1979) *superseded by statute on other grounds as stated
    in Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14 (3d Cir. 1985) .............................. 8

*Steinberg v. Buczynski*,
    40 F.3d 890 (7th Cir. 1994).................................................................................................. 21

*Sugarman v. Taylor (In re Yellow Cab Coop. Inc.)*,
    602 B.R. 357 (Bankr. N.D. Cal. 2019).......................................................................... 17, 18

*In re Thorpe Insulation Co.*,
    671 F.3d 1011 (9th Cir. 2012)............................................................................................. 11

*In re Trinity Communs.*,
    2012 WL 1067673 (Bankr. E.D. Tenn. Mar. 14, 2012) ....................................................... 12

*Uecker v. Zentil*,
    244 Cal. App. 4th 789 (2016)............................................................................................... 16

*In re VeraSun Energy Corp.*,
    2013 WL 3336870 (Bankr. D. Del. June 28, 2013) ............................................................. 14

*Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach.
    Enters. Inc., Inc.)*,
    479 F.3d 791 (11th Cir. 2007).............................................................................................. 11

*Yoo v. Jho*,
    147 Cal. App. 4th 1249 (2007)............................................................................................. 19

*In re Young Jin Yoon*,
   627 B.R. 905 (Bankr. C.D. Cal. 2021) ................................................................. 13

### Statutes and Rules

9 U.S.C. § 2 .......................................................................................................... 7, 8

9 U.S.C. § 3 ............................................................................................................. 12

9 U.S.C. § 4 ......................................................................................................... 2, 9, 12

11 U.S.C. § 544 .......................................................................................... 6, 7, 12, 13, 16

11 U.S.C. § 547 ........................................................................................................... 6

11 U.S.C. § 548 ................................................................................................ 6, 7, 12, 16

28 U.S.C. § 1334(b) ................................................................................................ 13, 19

Federal Rule of Civil Procedure 12(b) ........................................................................... 8

Federal Rule of Bankruptcy Procedure 7012 ................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### Introduction

By pursuing claims against Defendants here, the Trustee is inexplicably going after one of the *victims* of the scheme.  Pre-bankruptcy, Defendant OHP-CDR, through PurchaseCo, provided over $6 million in cash to LPG in exchange for certain LPG receivables.  LPG represented both that it had complied and would comply with all applicable laws, and that it had valid title to the receivables.

Unfortunately, LPG was lying.  For instance, LPG had sold and kept selling the same receivables to multiple parties.[2]  Tony Diab, LPG's principal, would later create new law firms into which to transfer LPG's assets, *without* Defendants' consent.[3]  Although OHP-CDR continued to demand payments under its original contracts, no Defendant entered into any new agreements with LPG, and they certainly did not assist Mr. Diab in his alleged asset transfers.[4]  Certain Defendants participated in LPG's bankruptcy proceedings, but they have yet to be made whole—and, like other victims, likely never will be.

Nonetheless, the Trustee, standing in the shoes of LPG, now sues Defendants under the theory that, somehow, the mere act of purchasing LPG's receivables makes Defendants liable *to* LPG *for* LPG's own sins.  On the ultimate merits, the Trustee is wrong, factually and legally.  But the Court does not need to delve into the merits, as dismissal is warranted on multiple pre-merits grounds.

---

[1]  Defendants strongly dispute many of the Trustee's allegations.  But because this is a motion to compel arbitration or to dismiss on the pleadings, Defendants are required to accept as true the factual allegations in the Amended Complaint.

[2]  *See* Amended Complaint ¶ 99 ("In furtherance of its Ponzi Scheme, LPG repackaged client files that had previously been sold to OHP-CDR and then resold or transferred those same files to other entities controlled by Diab, Reale, and Azevedo.").

[3]  *See id.* ¶¶ 101-102 & Ex. N (LPG "is moving its files to Oakstone [and] this commenced without PurchaseCo's consent").

[4]  *Id.* ¶¶ 104-113.

-1-

*First*, the very contracts that the Trustee now alleges constitute the wrongdoing contain mandatory arbitration clauses. Those clauses require arbitration for all claims "arising out of, connected with or relating to" those contracts, as well as "tort claims" arising from future transactions between the parties. The Trustee's claims fall squarely within these provisions and therefore arbitration is mandatory pursuant to 9 U.S.C. § 4 and a long line of Supreme Court cases.

That the Trustee seeks to void the contracts that contain the arbitration clauses is of no moment—the legality of the contracts, under the law, is something for the arbitrator to decide. Nor can the Trustee find respite in the Bankruptcy Code, for a number of reasons: the Trustee has brought only state-law claims based on pre-petition behavior; the Trustee does not invoke any substantive right granted by the Bankruptcy Code; and, particularly as LPG's plan of liquidation was confirmed long ago, there is no bankruptcy policy that can preempt the Federal Arbitration Act's mandate to honor contractual arbitration clauses. Accordingly, the Court should compel arbitration of the Trustee's claims and should stay this adversary proceeding pending the outcome of the arbitration.

*Second*, if the Court does not compel arbitration, then it should dismiss the Amended Complaint for lack of jurisdiction. The LPG plan was confirmed more than a year ago. The Court's jurisdiction is confined to matters having a "close nexus" to the plan. The Trustee's apparent hope that Defendants will pay to settle these meritless claims, such that there will be money to be distributed to other victims, does not come close to meeting the exacting "close nexus" standard.

*Third*, even if the Court does not compel arbitration, and even if also finds it has jurisdiction over this dispute, the claims would be subject to dismissal on the merits, too. For instance, all claims are barred by *in pari delicto*. That doctrine bars parties who participate in allegedly illegal conduct from recovering from other participants in that conduct. The doctrine plainly applies here. Even taking the Amended Complaint's allegations as true, all that is alleged is that Defendants provided money that helped prop up a Ponzi scheme being run *by LPG*. The Trustee, standing in LPG's shoes, cannot blame and recover from others for LPG's own conduct. Courts routinely dismiss complaints brought by trustees who have similarly attempted to go after those who allegedly co-participated in the debtor's own Ponzi scheme.

-2-

*Fourth*, the Amended Complaint seeks "restitution" of $2 million paid by LPG pre-petition during its partial performance of the agreements at issue.  That count is riddled with errors—it refers to contracts not between the parties here, and asserts claims against Defendants who never signed an agreement at all.  It also ignores that, where a contract is illegal, courts often determine they must leave the parties as they are found.  Most fundamentally, though, the Amended Complaint fails to plausibly plead that it would be "inequitable and unjust" for Defendants to keep the $2 million.  That allegation fails as a matter of basic math:  *Defendants paid LPG pre-petition far more than LPG paid Defendants pre-petition*.

*Fifth*, the Amended Complaint improperly conflates injury to LPG with injury to LPG's creditors.  The Amended Complaint alleges that the Defendants caused harm to LPG's customers because LPG monetized unearned customer payments.  But the Trustee is asserting only claims that belong to LPG, *see, e.g.*, Amended Complaint ¶ 166, and cannot recover for injuries to LPG's creditors.  Because the Trustee has standing only for LPG's harms, but not does not plausibly allege any such harm, the claims must be dismissed.

*Finally*, the Trustee asserts claims for "deepening insolvency" and aiding and abetting "deepening insolvency."  But "deepening insolvency" is not an independent cause of action, so those claims must be dismissed, too.

### **Background Facts and Allegations of the Amended Complaint**

***LPG's Operations.***  LPG was a law firm.  Bankr. ECF 320 at 4:11.  The services LPG offered included "handl[ing] pending litigation, whether on the defense or offensive side of the pleading, to address creditors threat[en]ing litigation and[/]or debt collection agencies engaging in unfair debt collection practices."  *Id.* at 4:13-17.  LPG also provided services in the form of "settlement negotiations and debt invalidation strategies."  *Id.* at 5:5-7.

One of the ways LPG generated clients was by utilizing the services of "marketing affiliates."[5]  The marketing affiliates were companies that owned and operated systems of generating

---

[5]  *See Fifth Amended Complaint* ("Diab Complaint") filed as ECF 653 in *Marshack v. Diab et al.*, Adv. Proc. No. 8:23-ap-01046-SC, at ¶ 43.

-3-

leads, consisting of consumers interested in the legal services offered by LPG.  Diab Complaint ¶ 43.  They were retained by LPG to provide marketing and customer service functions, and would receive, as payment, a percentage of the fees generated by LPG from each client or "file" referred to LPG by the marketing affiliate.  *Id.*  However, because LPG and its marketing affiliates received only incremental payments over time, LPG and the affiliates would often sell the future cash flows at discounted rates to factoring companies that bought the receivables on account of these files.  *Id.* ¶ 46.

***Certain Defendants Purchase LPG's Receivables.***  To be clear, Defendants are *not* "marketing affiliates."   Rather, certain Defendants here merely purchased some of LPG's receivables.  Specifically, in September 2022, OHP-CDR and Mario Azevedo executed a Limited Liability Company Agreement of PurchaseCo 80, LLC (the "LLC Agreement").   Amended Complaint ¶ 79 & Ex. H.  OHP-CDR provided $10,000,000 of capital to PurchaseCo, which it used to purchase receivables from LPG and certain marketing affiliates.  *Id.* ¶ 80.

In December 2022, OHP-CDR allegedly noticed "significant reductions" in LPG's file counts.  Amended Complaint ¶¶ 101-102.  It allegedly later learned that Mr. Diab had created new law firms and transferred LPG's assets to those firms without OHP-CDR's or PurchaseCo's knowledge or consent.  *Id.*, Ex. N (LPG "is moving its files to Oakstone [and] this commenced without PurchaseCo's consent").

During the pre-petition period, OHP-CDR and PurchaseCo sought to be paid pursuant to the agreements, as was their contractual right.  But no Defendant entered into any new agreements with LPG, nor did any Defendant take any steps to restructure OHP-CDR's or PurchaseCo's agreements with LPG.  *Id.* ¶¶ 104-113.  The only basis for the Trustee (falsely) to suggest otherwise is a privileged email between an OHP-CDR employee and an attorney, which on its face only refers to a "mental exercise"—*i.e.*, a complete hypothetical.  In the unlikely event the Trustee's claims are allowed to proceed on the merits, discovery will ultimately confirm Defendants did nothing to assist in whatever pre-petition shell games Mr. Diab allegedly engaged.

***The Contracts Contain Broad Arbitration Clauses.***  The contracts giving rise to the Trustee's claims have broad arbitration clauses.  The LLC Agreement provides:

-4-

> Upon demand of any party, whether made before or after institution of any judicial proceeding, *any dispute, claim or controversy arising out of, connected with or relating to* this Agreement, any Ancillary Agreements, and/or any Related-Party Agreements ("Disputes")[], between or among the parties hereto and to any Ancillary Agreements, and/or any Related-Party Agreements, related third parties, and the parties' respective employees, agents, representatives, affiliates, beneficiaries, related entities and assigns, shall be resolved by binding arbitration as provided herein. Institution of a judicial proceeding by a party does not waive the right of that party to demand arbitration hereunder. *This Arbitration Agreement is intended to be as broad as legally permissible.* Disputes may include, but are not limited to, tort claims, counterclaims, claims arising from Ancillary Agreements or Related-Party Agreements executed in the future, *disputes as to whether a matter is subject to arbitration*, or claims concerning any aspect of the past, present or future relationships arising out of or connected with this Agreement, any Ancillary Agreements, and/or any Related-Party Agreement. *The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, scope, applicability, enforceability, or waiver of this Arbitration Agreement including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable*.

LLC Agreement § 14.13(a) (ECF 11 at 151/217) (emphases added).

LPG also executed an unlimited guaranty ("LPG Guaranty"), securing repayment of the capital OHP-CDR provided. Amended Complaint ¶ 88. The LPG Guaranty also contains an arbitration clause:

> Upon demand of any party, whether made before or after institution of any judicial proceeding, *any dispute, claim or controversy arising out of, connected with or relating to this Guaranty* ("Disputes"), between or among the parties hereto, shall be resolved by binding arbitration as provided herein. Institution of a judicial proceeding by a party does not waive the right of that party to demand arbitration hereunder. *This Arbitration Agreement is intended to be as broad as legally permissible.* Disputes may include, but are not limited to, tort claims, counterclaims, claims arising from documents executed in connection with this Guaranty in the future, *disputes as to whether a matter is subject to arbitration*, or claims concerning any aspect of the past, present or future relationships arising out of or connected with this Guaranty. *The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, scope, applicability, enforceability, or waiver of this Arbitration Agreement including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable.* The obligation to arbitrate any Dispute will survive the repayment in full of all Guaranteed Obligations, the occurrence of the Release Date, and the termination of this Guaranty for any reason.

LPG Guaranty § 14(b)(i) (ECF 11 at 169-170/217) (emphases added).

***The LPG Bankruptcy Proceedings.***  In March 2023, LPG filed a voluntary chapter 11 petition.  Amended Complaint ¶ 114.

In May 2023, OHP-CDR filed a proof of claim, asserting a claim of no less than $16,938,954 pursuant to the LPG Guaranty.  *Id.* ¶ 117.

In September 2023, OHP-CDR and PurchaseCo filed a Complaint to Determine Priority of Lien and Ownership Interest against the Trustee and Azzure Capital, LLC, which was not a party to the LLC Agreement or LPG Guaranty, to determine the validity and priority of their liens and interests.  *Id.* ¶ 118.

In October 2023, the Trustee filed an answer and counterclaims, seeking to avoid OHP-CDR's liens and to avoid a number of transfers pursuant to 11 U.S.C. §§ 544, 547, and 548.  *Id.* ¶ 119.

In August 2024, OHP-CDR, PurchaseCo, and the Trustee entered into a settlement ("Settlement"), which among other things, resolved the Trustee's avoidance counterclaims, and which the Court approved.  *Id.* ¶¶ 125-126.  The Trustee did not release unknown claims in the Settlement, instead releasing only "known claims."  *Id.* ¶ 127.

In September 2024, the Court entered an order confirming the Modified First Amended Joint Plan of Liquidation.  Bankr. ECF 1646.  The confirmation order incorporated the terms of the order that approved the Settlement.  Confirmation Order ¶ 36.

***The Trustee's Decision to Attack LPG's Victims.***  In January 2026, the Trustee filed a new complaint against the Defendants, later replaced by the Amended Complaint.  ECF 11.

The Trustee alleges that Defendants provided financing to LPG while knowing that LPG was engaged in a Ponzi scheme.  Amended Complaint ¶¶ 94-98.  The Trustee further alleges that Defendants learned of Mr. Diab's plan to divert LPG's assets to new law firms and took steps to restructure their arrangement before LPG filed bankruptcy.  *Id.* ¶¶ 99-113.

Based on these allegations, the Trustee asserts that the LLC Agreement and "Ancillary Agreements" (as defined in the LLC Agreement) are void due to illegality as to trigger a right to "restitution," and the Trustee asserts claims for aiding and abetting breach of fiduciary duty,

conversion, aiding and abetting conversion, deepening insolvency, and aiding and abetting deepening insolvency.

It is important to note that the current complaint does *not* bring avoidance claims pursuant to 11 U.S.C. §§ 544 or 548. That such types of claims are *not* part of the Amended Complaint is the necessary result of the Trustee's own prior strategic decisions. As discussed above, the Trustee already settled and released any such claims. Thus, all he is left with—and all he tries to assert here—are claims under state law based on LPG's supposed pre-petition rights. That the Trustee can *only* stand in the shoes of LPG here raises unique grounds for dismissal *here*, regardless of the merits of the Trustee's larger campaign against marketing affiliates.[6]

### Legal Standard

***Motions to Compel Arbitration.*** There is a strong federal policy favoring arbitration. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Courts have a duty to "rigorously enforce agreements to arbitrate" and this duty "is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon*, 482 U.S. at 226.

The Federal Arbitration Act ("FAA") demands that arbitration terms be enforced just like any other contractual terms. *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) ("Congress enacted the FAA in response to widespread judicial hostility to arbitration . . . [a]nd consistent with the [FAA's] text, courts must 'rigorously enforce' arbitration agreements according to their terms."). Pursuant to the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

---

[6] According to the Trustee, the state-law claims being asserted here are not *also* barred by the Settlement because they fall into a carve-out for "unknown" claims. Defendants disagree—the Trustee obviously knew full well of Mr. Diab's allegedly illegal actions long ago. Defendants reserve rights, but to be clear Defendants are *not* seeking dismissal of the Amended Complaint on this ground—a Settlement bar—at this time.

-7-

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Stateside Machinery Co., Ltd. v. Alperin*, 591 F.2d 234, 240 (3rd Cir. 1979) ("Doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration.") *superseded by statute on other grounds as stated in Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18 (3d Cir. 1985); *Pfeiffer v. Dominion Management of Delaware t/a Cash Point (In re Pfeiffer)*, 2011 WL 4005504, at *4 (Bankr. E.D. Pa. Sept. 8, 2011) ("Doubts as to the scope of an arbitration agreement should be resolved in favor of arbitration.").

***Motions to Dismiss.***  A motion to dismiss pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b) tests the legal sufficiency of a complaint.  To survive dismissal, a complaint must contain sufficient factual matter to state a claim for relief plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is insufficient where "it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009) (internal quotations omitted).  Courts read allegations in the light most favorable to the non-moving party, but "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (internal quotations omitted).  Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

<u>**Argument**</u>

**I.**   <u>**THE COURT SHOULD REQUIRE THE TRUSTEE TO ARBITRATE THE ASSERTED CLAIMS**</u>

**A.**   <u>**The Court Must Compel Arbitration Because There Is an Agreement to Arbitrate and the Trustee's Claims Fall Within the Scope of the Arbitration Clauses**</u>

As discussed above, the FAA establishes a "national policy favoring arbitration," *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984), and requires courts to compel arbitration when the agreement so requires, 9 U.S.C. § 2.  The Supreme Court has repeatedly held that there is a strong

-8-

presumption in favor of arbitration. *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

When deciding whether a matter must be submitted to arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the specific dispute falls within the substantive scope of that agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). If the Court makes these two findings, it must refer the case to arbitration without reviewing the merits. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). The Trustee bears the burden of establishing that the claims at issue are unsuitable for arbitration. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The Trustee cannot meet that burden with "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" *Id.* at 89 (citations omitted).

Here, both baseline requirements are met, and the Trustee cannot identify any valid grounds for circumventing the arbitration clauses and the federal law giving force to them.

> ### 1.    *Valid Agreements to Arbitrate Exist*

As quoted in the Background Facts section above, the very contracts the Trustee invokes contain detailed, broad arbitration clauses. *See* LLC Agreement § 14.13(a) (ECF 11 at 151/217); LPG Guaranty § 14(b)(i) (ECF 11 at 169-170/217). Both arbitration clauses are expressly governed by the FAA. LLC Agreement § 14.13(b); LPG Guaranty § 14(b)(ii). LPG signed both agreements, and therefore they are valid and binding. *See* 9 U.S.C. § 4.

> ### 2.    *The Trustee's Claims—Brought on Behalf of LPG—Fall Within the Scope of the Arbitration Clauses*

The claims at issue fall within the scope of the arbitration clauses agreed to by the parties. As an initial matter, the Trustee has stepped into LPG's shoes in this Amended Complaint—that is, the Trustee is asserting only LPG's claims that became property of the estate under section 541. *See, e.g.*, Amended Complaint ¶ 166 (alleging that the Trustee is asserting debtor claims and not derivative creditor claims under section 541). Therefore, if the claims at issue would be subject to

mandatory arbitration had LPG brought them, then the Trustee's suit must necessarily also be subject to mandatory arbitration.

The Trustee is asserting a series of tort claims based on alleged actions taken by Defendants to aid LPG in its Ponzi scheme and to move LPG's assets to new law firms.  All of those claims boil down to the allegation that, by giving LPG money, certain Defendants somehow became liable to LPG for LPG's own wrongdoing.[7]  Although this is nonsensical, what matters for current purposes is that the claims are, for instance, "tort claims" that "aris[e] out of," are "connected with" or at least "relat[e] to" the agreements by which PurchaseCo purchased receivables from LPG.  All claims thus fall directly within the terms of the arbitration clauses.  And even if that were somehow not the case, the arbitration clauses *also*, for instance, require arbitration of any "claims concerning any aspect of the past, present or future relationships arising out of or connected with" the LLC Agreement or LPG Guaranty.

> 3.    <u>The Trustee Cannot Avoid Arbitration by Alleging the Agreements Are</u>
> <u>"Illegal"</u>

The Trustee cannot seek to avoid arbitration by suing to void the agreements themselves. The Supreme Court has held that courts must enforce arbitration agreements that delegate to the arbitrator "threshold issues concerning the arbitration agreement," such as "whether the parties have agreed to arbitrate [or] whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  This means that a party's challenge to a contract "on the ground of illegality" "does not prevent a court from enforcing a specific agreement to arbitrate," thus "leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id.* at 70-71.

---

[7]  Although only OHP-CDR is a signatory to the LLC Agreement, the arbitration clauses require LPG (and the Trustee asserting LPG's claims) to arbitrate claims against the other Defendants.  *See* LLC Agreement § 14.13(a) ("[A]ny dispute, claim or controversy arising out of, connected with or relating to this Agreement, any Ancillary Agreements, and/or any Related-Party Agreements . . . , between or among the parties hereto and to any Ancillary Agreements, and/or any Related-Party Agreements, related third parties, and the parties' respective employees, agents, representatives, affiliates, beneficiaries, related entities and assigns, shall be resolved by binding arbitration.").

Even if the Supreme Court had not made that clear as a general matter, the parties expressly agreed for that to be the case here. That is, the parties here expressly agreed that the voidability issue is itself subject to arbitration:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, scope, applicability, enforceability, or waiver of this Arbitration Agreement including, but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable.

LLC Agreement § 14.13(a) (ECF 11 at 151/217); LPG Guaranty § 14(b)(i) (ECF 11 at 169-170/217). That agreement to arbitrate the issue of voidability is entitled to enforcement under the FAA just as any other agreement to arbitrate.

### 4.   The Trustee Cannot Avoid Arbitration by Referencing LPG's Bankruptcy

That LPG went through bankruptcy does not allow the Trustee to avoid LPG's agreement to arbitrate either. The FAA may be overridden only by a "contrary congressional command," which must consist of (1) a federal statute; (2) the statute's legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227. The party opposing arbitration bears the burden of establishing that Congress intended to preclude arbitration. *Green Tree*, 531 U.S. at 91-92.

The Trustee cannot establish that the Bankruptcy Code provides such a countervailing Congressional mandate. To the contrary, the Ninth Circuit has made clear that "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting." *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012);[8] *see also Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach.*

---

[8]   In *Thorpe*, a distributor of products containing asbestos (Thorpe) negotiated with a group of insurers to fund a § 524(g) trust in exchange for a § 524(g) injunction. An insurer (Continental) left out of those negotiations claimed that the acts of lining up the chapter 11 petition in that way violated a pre-existing agreement between Thorpe and Continental. 671 F.3d at 1014-15. The Ninth Circuit found that allegations the debtor had breached an agreement by pre-arranging for a § 524(g) trust in a chapter 11 filing was "inextricably intertwined" with the bankruptcy case itself, such that the breach allegations went to the "heart" of the bankruptcy court's task. *Id.* at 1017, 1022. Here, by sharp contrast, the Trustee is bringing claims after plan confirmation, and resolution of the Trustee-Defendant dispute here will not impact the bankruptcy proceeding in any way.

-11-

*Enters. Inc., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007) (same); *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006) (same).

Even if there are some instances where the Bankruptcy Code and the FAA could conflict, no such concerns are present here. LPG's plan was approved over a year and a half ago, significantly lessening any importance of this action to the bankruptcy overall. More fundamentally, again, the Trustee has not brought—and, under the terms of the Settlement, cannot bring—avoidance claims under 11 U.S.C. §§ 544 and 548. Rather, the claims brought here are post-confirmation non-core claims arising under state law and based on pre-petition transactions. They are all claims where the Trustee is merely standing in LPG's shoes. Bankruptcy courts routinely send such disputes to arbitration. *See, e.g.*, *In re Rarities Group, Inc.*, 434 B.R. 1, 10-11 (D. Mass. 2010) (requiring arbitration of a trustee's employment-based claims against a creditor); *In re Dixon*, 428 B.R. 911, 916 (Bankr. N.D. Ga. 2010) (requiring arbitration of a claim to determine the validity, extent, and priority of a lien because the claim arose under Truth in Lending Act and could have been brought in a non-bankruptcy forum); *In re Trinity Communs.*, 2012 WL 1067673, at *16 (Bankr. E.D. Tenn. Mar. 14, 2012) (requiring arbitration of adversary proceeding brought by chapter 11 debtor against defendant service provider for breach of contract after court confirmed the debtor's chapter 11 plan); *In re Singer Co. N.V.*, 2001 WL 984678 at *6 (S.D.N.Y. Aug. 27, 2001) (requiring arbitration of an adversary proceeding between the debtor and a creditor arising from a payment dispute pursuant to a pre-petition agreement).

*    *    *

In sum, LPG agreed to arbitration clauses that would plainly require arbitration of the claims at issue if they were brought directly by LPG. The Trustee, standing in LPG's shoes, is bound by the same agreements. Because there are valid agreements to arbitrate, and this dispute falls within the scope of those arbitration clauses, the Court must refer the case to arbitration without reviewing the merits. Under Sections 3 and 4 of the FAA, motions to compel arbitration and stay pending litigation are to be summarily granted and the adversary proceeding is to be stayed. *Smith v. Spizzirri*, 601 U.S. 472, 477-78 (2024); *Moses H. Cone*, 460 U.S. at 22-23 ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a

-12-

dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.").

## II.    THE COURT DOES NOT HAVE POST-CONFIRMATION JURISDICTION

If the Court does not compel arbitration (it should), it should dismiss the Amended Complaint for lack of subject matter jurisdiction. The Trustee bears the burden of establishing federal jurisdiction. *In re Blanchard*, 545 B.R. 18, 28 (Bankr. C.D. Cal. 2016). The Trustee alleges this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). Amended Complaint ¶ 1. The Trustee asserts that the Court has jurisdiction because the claims either "arise in" or are "related to" LPG's bankruptcy case. *Id.* These allegations do not withstand scrutiny.

### A.    The Court Does Not Have "Arising in" Jurisdiction

"A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010); *In re Young Jin Yoon*, 627 B.R. 905, 915 (Bankr. C.D. Cal. 2021) ("Matters 'arise in' a bankruptcy if they concern the administration of the bankruptcy case and have *no existence outside of the bankruptcy.*") (emphasis in original).

Such is plainly not the case here. To the contrary, all of the claims are expressly based on *state laws*. And all of the claims are based on *pre-petition conduct*. They thus do not "arise in" the bankruptcy at all. *See, e.g.*, *Yoon*, 627 B.R. at 916 (holding that bankruptcy court did not have "arising in" jurisdiction over state law fraudulent transfer claims that were not brought under sections 544 or 548); *In re Cytodyn of N.M., Inc.*, 374 B.R. 733 (Bankr. C.D. Cal. 2007) (holding that the court did not have "arising in" jurisdiction over state law claims because "arising in" jurisdiction "has been held to refer to administrative matters that arise in the course of a bankruptcy case"); *In re Albert-Sheridan*, 2025 WL 3079967, at *1 n.3 (Bankr. C.D. Cal. Oct. 30, 2025) (stating that claims that could exist in "a non-bankruptcy setting" do not "arise in" a bankruptcy case); *In re Mohammed*, 2021 WL 2373632, at *2 (Bankr. C.D. Cal. June 9, 2021) (holding that the court did

-13-

not have "arising in" jurisdiction over trademark infringement claims and other claims based on state law because those claims "are not an administrative matter unique to the bankruptcy process").

### B.      The Court Does Not Have "Related-to" Jurisdiction

When determining if "related-to" jurisdiction exists post-confirmation, the inquiry is whether there is a "close nexus" between the controversy at issue and the bankruptcy plan or proceeding, namely, matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005).[9] Thus, post-confirmation bankruptcy court jurisdiction is "substantially more limited" than pre-confirmation jurisdiction. *Id.* None of the arguments the Trustee may try to make here can justify related-to jurisdiction.

The Trustee may argue that a recovery here could be given to other creditors. But under the close-nexus standard, a mere effect on distributions is not enough. *Id.* at 1194, n.1. Courts do not have "related-to" jurisdiction over prepetition state law claims of the debtor that become property of the estate when they are pursued post-confirmation, even if the result may affect distributions to other creditors. *In re Heller Ehrman LLP*, 461 B.R. 606, 609 (Bankr. N.D. Cal. 2011) (because lawsuit to collect an unpaid account receivable could have been brought in state court before bankruptcy, trustee's claim was not "related to" the case despite the possibility that the result could affect distributions).[10] It makes sense for a mere impact on distributions to fall short. Such an argument could be made in nearly any case, and thus such an exception would swallow the close-nexus rule. Or, in the words of the Ninth Circuit, such an argument would "endlessly stretch a bankruptcy court's jurisdiction." *Pegasus Gold*, 394 F.3d at 1194 n.1.

---

[9]   Only *before* plan confirmation do courts analyze whether "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pegasus Gold*, 394 F.3d at 1193 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[10]   *See also, e.g.*, *In re VeraSun Energy Corp.*, 2013 WL 3336870, at *5-6 (Bankr. D. Del. June 28, 2013) (claims for debt owed to debtor pre-petition did not meet the "close nexus" test); *In re The Fairchild Corp.*, 452 B.R. 525, 531 (Bankr. D. Del. 2011) (estate claims brought post-confirmation failed close nexus test because distributing assets to other creditors was insufficient); *In re BWI Liquidating Corp.*, 437 B.R. 160, 164-68 (Bankr. D. Del. 2010) (no post-confirmation jurisdiction for estate claim brought by liquidation trust).

The Trustee may also argue that the Court has "related-to" jurisdiction because an arbitrator may be called on to interpret the Settlement terms agreed to by the Trustee and certain Defendants. But courts—and arbitrators—interpret orders issued by other tribunals all the time.  The potential need to interpret an order issued by a bankruptcy court does not show a "close nexus" to the bankruptcy proceeding itself.  *See, e.g.*, *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 760-63 (9th Cir. 2022) (no "related-to" bankruptcy jurisdiction simply because the litigation required interpretation of the plain language of a bankruptcy court order, explaining that "proceedings that merely require the court to read a confirmed plan to determine whether it bars certain claims that arose before the confirmation date are not proceedings 'affecting the interpretation [or] implementation' of a plan," and even if the court had to review the plan, the review did not "depend upon resolution of a substantial question of bankruptcy law"); *In re Kmart Corp.*, 359 B.R. 189, 196-198 (Bankr. N.D. Ill. 2005) (no "related-to" jurisdiction even though it was necessary to interpret the preclusive effect of a bankruptcy court order); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 313 B.R. 9, 20-21 (D. Conn. 2004) ("related-to" jurisdiction was not created "simply by virtue of the necessity of interpreting the Settlement Agreement and/or Plan of Reorganization" and state courts were capable of interpreting bankruptcy court orders).

For similar reasons, the Trustee cannot hook related-to jurisdiction on the mere fact that OHP-CDR filed a proof of claim in the bankruptcy case.  That proof of claim was resolved long ago, and the Amended Complaint is not an objection to the proof of claim, nor is it a counterclaim to the proof of claim.  *See In re Jewelcor Inc.*, 150 B.R. 580, 582-83 (Bankr. M.D. Pa. 1992) (holding that the court lacked post-confirmation jurisdiction over claims against entity that had previously filed a proof of claim, explaining that the complaint was not a counterclaim to the proof of claim because the claim had been resolved before the complaint was filed).[11]

---

[11]    Even if the filing of the claim provided some hook—it does not—OHP-CDR is the only Defendant that filed a proof of claim.  It is well-established that a proof of claim by a corporation does not subject the corporation's principals to the jurisdiction of the bankruptcy court, *In re Phelps Techs, Inc.*, 238 B.R. 819, 824-25 (Bankr. W.D. Mo. 1999).  That any claim-form-based jurisdictional argument would reach at most one of many Defendants further confirms there is no "close nexus" here.

-15-

Finally, even if the Trustee managed to find some foothold, it could not support jurisdiction here because the plan was approved over a year and a half ago.  Courts recognize that the passage of time strongly weighs against a finding of "related to" jurisdiction.  *See In re Solyndra, LLC*, 2015 WL 6125246, at *5 (Bankr. D. Del. Oct. 16, 2015) (the fact that the plan was confirmed over two years ago weighed against jurisdiction).

## III.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM

Even if the Court were to decline to compel arbitration and to dismiss the case for lack of jurisdiction, all claims should be dismissed for failure to state a claim.

### A.    All of the Claims Are Barred by the Doctrine of *In Pari Delicto*

"The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them."  *In re KSL Media Inc.*, 2016 WL 3549166, at *8 (Bankr. C.D. Cal. June 21, 2016).  "Under California case law, as well as in every other circuit court of appeals which has considered this issue, *in pari delicto* may be applied to a bankruptcy trustee."  *Id.  See also Uecker v. Zentil*, 244 Cal. App. 4th 789, 794-95 (2016) (dismissing claims by trustee without leave to amend based on *in pari delicto*); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 680 (2005) (applying *in pari delicto* to bar bankruptcy trustee's claims against debtor's law firm for alleged misconduct arising out of Ponzi scheme).

As an initial matter, unlike in other cases, the Trustee cannot avoid application of the doctrine by arguing that the *in pari delicto* doctrine does not apply to avoidance claims under 11 U.S.C. §§ 544 and 548.  That is because, again, this action is brought entirely under state law, and the Trustee is standing in the shoes of LPG.  As this Court has explained, the Trustee is subject to an *in pari delicto* defense when he is asserting the debtor's claims.  *Marshack v. JGW Solutions, LLC*, Adv. P. No: 8:23-ap-01148-SC, ECF 72 at 28-29 (Bankr. C.D. Cal. March 27, 2025) ("The defense of *in pari delicto* is thus available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor.").

-16-

Courts regularly dismiss claims, even at the pleading stage, pursuant to the *in pari delicto* doctrine.[12] Such is appropriate here, as all the facts necessary for the doctrine's application are part of the Trustee's own allegations. The Trustee repeatedly alleges that the Debtor LPG engaged in a Ponzi scheme designed to defraud its creditors. Amended Complaint ¶¶ 26 ("Tony Diab . . . at all times relevant herein . . . controlled LPG . . . devised a plan to fraudulently transfer funds, client files, client funds and assets . . . out of LPG[.]"), 27 ("Pursuant to the same unlawful Ponzi scheme, Tony Diab caused funds in possession and control of LPG to be diverted to pay for extravagant and personal expenses, debt[s] and other liabilities of Tony Diab with no intended or actual benefit to LPG."), 43-46 (explaining that a Ponzi scheme presumption exists and that "Diab was running a Ponzi Scheme using LPG"). In other words, the Trustee seeks to hold Defendants liable for actions carried out by LPG, in whose shoes the Trustee now stands. It is in just such situations that *in pari delicto* applies. LPG cannot hold Defendants liable for giving money to LPG, when LPG itself took that money and used it as part of LPG's own allegedly illegal scheme.

The Trustee is likely to argue that an issue of fact is created by the supposed "adverse interest" exception to the rule of *in pari delicto*. However, that exception is itself subject to an exception—the "sole actor" exception: *in pari delicto does* apply to bar claims when the "defrauded entity and the alleged bad actors are one and the same." *See Yellow Cab Coop.*, 602 B.R. at 362. Here, again based on the Trustee's own allegations, there can be no disputing that LPG and Mr. Diab are "one and the same," such that the Trustee cannot avoid the application of *in pari delicto*. Amended Complaint ¶¶ 26 ("Tony Diab . . . controlled LPG"), 27 ("Tony Diab caused funds in

---

[12] *See, e.g.*, *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 345-46, 357-60 (3d Cir. 2001) (affirming dismissal, based on *in pari delicto*, of fraud, aiding and abetting breach of fiduciary duty, and other claims against an outside service provider alleged to have participated in a Ponzi scheme carried out by the Debtors and their management); *Sugarman v. Taylor (In re Yellow Cab Coop. Inc.)*, 602 B.R. 357, 358 (Bankr. N.D. Cal. 2019) (dismissing complaint for failure to state a claim based on *in pari delicto* defense); *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 369 (N.D. Cal. 2015) (dismissing a trustee's claim for aiding and abetting breach of fiduciary duty based on *in pari delicto* because the trustee's complaint established the debtor is "at least as blameworthy as the defendant"); *In re Singh*, 2015 WL 1887939, at *10 (Bankr. E.D. Cal. Apr. 22, 2015) (finding, in dismissing the trustee's claims based on *in pari delicto*, that "the trustee himself has asserted in his complaint that the debtor was running a Ponzi scheme").

-17-

possession and control of LPG to be diverted"), 46 ("Diab used LPG to operate a Ponzi Scheme"), 50 ("Upon information and belief, LPG and Coast Processing were in fact both controlled by Diab".); Diab Complaint ¶ 39 ("Diab controlled and operated LPG since its inception.").  Nor can the Trustee credibly argue that LPG's sole shareholder, Daniel March, was an "innocent insider" to defeat the "sole actor" exception, given the Trustee's own allegations that: (i) Mr. Diab "rented" Mr. March's law license (*i.e.*, paid Mr. March an annual salary of $600,000 so that Mr. Diab could use Mr. March's law license to run LPG); (ii) Mr. March "masqueraded as the managing partner of LPG;" and (iii) Mr. March's predecessor, Mr. Thompson, "was put in place to hide [Mr.] Diab's control over LPG."  Diab Complaint ¶¶ 40-41.  Indeed, the Central District recently affirmed an appeal of the denial of administrative claim in the Trustee's favor, citing favorably allegations that "Debtor was controlled and operated by" Mr. Diab.[13]

It is the Trustee's burden to plead facts reasonably giving rise to a right to relief. Accordingly, if the pleadings defeat the claims asserted, dismissal is required even if something is normally treated as an affirmative defense.  Here, the Trustee's own allegations about Messrs. Diab and March confirm that the *in pari delicto* doctrine applies.  *Yellow Cab Coop.*, 602 B.R. at 362 (granting a motion to dismiss a complaint on *in pari delicto* grounds based on the trustee's allegations in the complaint that the "bad actors" "controlled the Debtor").  It was thus incumbent on the Trustee to plead facts demonstrating an exception to the *in pari delicto* doctrine, but he has not done so.  *Mortgage Fund '08*, 527 B.R. at 367 (dismissing complaint because the trustee's complaint contained facts demonstrating *in pari delicto* applied and the trustee did not plead facts sufficient to invoke the "adverse interest" exception).  To the contrary, every fact alleged by the Trustee, after years of experience with LPG, confirms that Mr. Diab controlled LPG (indeed, he *was* LPG), that there were no "innocent insiders," and that LPG is far more at fault for the alleged Ponzi

---

[13]  *See Greyson Law Center P.C. et al. v. Marshack (In re The Litigation Practice Group, P.C.)*, Case No. 24-2074-FMO (C.D. Cal. Mar. 13, 2026) ("Shortly after his appointment, the Trustee filed an adversary complaint alleging that Debtor was controlled and operated by a disbarred attorney, Tony Diab ….").

scheme than any of the Defendants.  This case is, thus, a textbook example of where the *in pari delicto* doctrine will not just inevitably apply, but should be applied even at the pleading stage.[14]

### B.     The Court Must Dismiss Count I Because the Trustee, Standing in LPG's Shoes, Cannot Rescind These Contracts

In Count I, the Trustee demands "restitution" of the money LPG paid certain Defendants, pre-petition, under allegedly illegal contracts.  Amended Complaint ¶ 150.  As an initial matter, the count is riddled with errors.  For instance, the Trustee seeks to recover approximately $2 million from the "OHP Defendants," but acknowledges that the only entity to which LPG ever made these payments was PurchaseCo.  Amended Complaint ¶ 98.  Other Defendants thus have nothing to "give back," and so should be dismissed from this Count.

Moreover, the Trustee references documents to which either the Defendants or LPG were not parties, such as the "Affiliate Agreements" and the "Omnibus Assignment Agreement."[15] Similarly, the Trustee does not identify, which, if any, of the "Affiliate Agreements" he seeks to void.  Bankruptcy courts, even in the pre-confirmation context, do not have jurisdiction over contracts between non-debtors that do not involve debtor property.  *In re 19 Court Street Assocs., LLC*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (holding that section 1334(b) "does not confer jurisdiction in the bankruptcy court over contracts between non-debtors").  Therefore, the claim to void the "Affiliate Agreements" must be dismissed for failure to state a claim, and the claim to void the "Omnibus Assignment Agreement" must be dismissed for lack of jurisdiction.

---

[14]    Defendants recognize that the Court has previously declined to apply the *in pari delicto* doctrine at the pleading stage.  *Marshack v. Marich Bein LLC et al.*, Adv. P. No. 24-ap-01040-SC, ECF 129 at 5-6 (Bankr. C.D. Cal. July 2, 2025).  But Defendants respectfully submit that application of the doctrine to this case is required based on the record of this case.  Defendants trust the Court will consider the issue in light of the allegations the Trustee makes in its Amended Complaint here, and in light of the authorities presented above, notwithstanding how the issue was litigated elsewhere.

[15]    *See* Amended Complaint ¶¶ 34 & Ex. C (acknowledging no Defendant is party to any "Affiliate Agreement"), 87 & Ex. J (acknowledging that LPG is not a party to the "Omnibus Assignment Agreement" and that the "Omnibus Assignment Agreement" has nothing to do with LPG's receivables).

-19-

Moving to the apparent core of the claim—the attempt to force PurchaseCo to repay $2 million—that, too, must be dismissed. The $2 million refers to money LPG paid PurchaseCo pre-petition pursuant to the parties' contracts. The Trustee asserts those contracts were illegal from the get-go. But if this were true, the Trustee has effectively pleaded himself out of court. If the pre-petition contracts were truly illegal, then the rule in California is that "the law will leave the parties as it finds them." *Yoo v. Jho*, 147 Cal. App. 4th 1249, 1251 (2007).

In *Yoo*, the plaintiff sued for fraud and sought to declare a contract void based on false representations about a company's annual sales. *Id.* at 1252. However, both the buyer and seller knew that the company was involved in the sale of counterfeit goods. *Id.* at 1254. In that situation, the appellate court held that it was reversible error for the trial court to enter judgment for the plaintiff rescinding the contract, *even if it meant the defendant got to keep its ill-gotten gains*. *Id.* at 1254-55. It is California policy that any perceived harshness of this rule is justified by the deterrent effect it has on parties entering into illegal contracts in the first place. *Id.* at 1255. That the Court should leave the parties here as it finds them is even more clear: Defendants do not have any ill-gotten gains, but instead are victims that lost millions.

There are exceptions to the "leave the parties as it finds them" rule. But the face of the pleadings confirms none could apply here, where, among other things, (a) LPG was, plainly, the more culpable party, and (b) Defendants are the victims. That is, whereas the Trustee's restitutionary demand cites $2 million going to PurchaseCo, it ignores the other side of the ledger, where PurchaseCo gave LPG over $6 million. In short, as the more-culpable, more-enriched party, LPG could not possibly demand a return of the $2 million paid *to* PurchaseCo after LPG was paid over $6 million *by* PurchaseCo. The Trustee, standing in LPG's shoes, thus cannot either.

Looked at another way, the core of Count I is the allegation that it would be "inequitable and unjust" to allow PurchaseCo to keep the $2 million paid to it by LPG. Amended Complaint ¶ 150. But that is a bare legal conclusion that the Court need not accept. *See, e.g.*, *Kelter v. Forrest*, 2008 WL 11342628, at *2 (C.D. Cal. July 2, 2008) (courts are not required to accept legal conclusions). The Amended Complaint does not plausibly state a right to relief because *LPG received and retained $6 million*. Because the $6 million paid to LPG is more than the $2 million returned from LPG,

basic math confirms that the only thing "inequitable and unjust" here is the Trustee demanding PurchaseCo write a second check on top of the $6 million it already paid LPG, and on top of the fact the Trustee already recovered the money elsewhere.[16]

### C.    The Trustee Lacks Standing to Assert Counts II-IV Because He Predicates These Counts on Alleged Injuries to LPG's Customers, Not LPG

Counts II (aiding and abetting breach of fiduciary duty), III (conversion), and IV (aiding and abetting conversion) should be dismissed because the Trustee has failed to plausibly allege a necessary element of each claim:  damage *to LPG*.[17]  Rather, each of Counts II through IV is expressly based on a theory of harm tied to damages incurred by *LPG's customers*.  For instance, Count II refers to the wrongful extraction of payments from LPG customers and refers to the purchased receivables as "stolen client funds."  Amended Complaint ¶¶ 156(a), (f), 161.  Count III expressly says that the "converted property included unearned ACH receivable that were required to preserved in a trust account" and that "LPG lacked the authority to authorize their transfers or distributions." *Id.* ¶ 170.  And Count IV is based on the theory that LPG "converted" funds paid by clients because LPG had not actually earned those funds yet.  *Id.* ¶ 182.  Such allegations on their face only explain, at most, how LPG harmed its customers.  They do not explain how Defendants

---

[16]  In terms of the equities of the situation, it should also be noted that the Trustee has seemingly already recovered from third parties the money that PurchaseCo. gave to LPG, which LPG then supposedly spent elsewhere.  The Trustee has alleged that, in September 2022, PurchaseCo paid LPG $6,244,811.78 in exchange for certain of LPG's receivables.  *See* First Amended Complaint ¶ 25, *Marshack v. Bayrooti*, Adv. P. No. 8:24-ap-1068-SC, ECF 9 (Bankr. C.D. Cal. July 12, 2024).  The Trustee has alleged that LPG used that money to pay Arash Asante Bayrooti.  *Id.* ¶¶ 26-28.  The Trustee already brought an action to recover those funds, which was resolved by returning money from Mr. Bayrooti's account.  *Marshack v. Bayrooti*, Adv. P. No. 8:24-ap-1068-SC, ECF 65 at 3 (Bankr. C.D. Cal. July 12, 2024).

[17]  *See generally, e.g.*, *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 641-42 (2021) (stating that aiding and abetting breach of fiduciary duty requires "harm to plaintiff"); *Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (conversion requires "damages").

caused damages to LPG. As damages to LPG is a required element of each of these claims, Counts II, III, and IV must be dismissed.[18]

The Trustee cannot excuse his inability to plausibly plead damages *to LPG* by relying on the bankruptcy code. This is because, again, this case is limited only to claims based on pre-petition conduct under state law. As this Court has recognized, "'[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor] itself.'" *Hoskins v. Citigroup, Inc. (In re Viola)*, 469 B.R. 1, 8 (B.A.P. 9th Cir. 2012) (quoting *Smith v. Arthur Andersen, LLP*, 421 F.3d 989, 1002 (9th Cir. 2005)); *see In re Litigation Practice Group P.C.*, 674 B.R. 884, 891 (Bankr. C.D. Cal. 2025) (stating that "'a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors'" and citing *Smith*, *Viola*, and other authorities); *see also Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("[T]he trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor."). The focus of the inquiry is whether the trustee "is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct." *Smith*, 421 F.3d at 1003. If a third party has allegedly "injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party." *Id.*

Thus, the Trustee does not have standing to assert claims for harm to LPG's customers, but has failed to plausibly allege any cognizable harm *to LPG*. Dismissal, or at an absolute minimum a requirement that the Trustee provide clarification, is thus appropriate. *See, e.g.*, *In re Plaza Mortg. and Fin. Corp.*, 187 B.R. 37, 44 (Bankr. N.D. Ga. 1995) (holding that the trustee could seek damages for injuries to the debtor, could not seek damages for injuries to creditors, and requiring the trustee to "clarify the elements of the damages claimed").

---

[18]   To the extent the Trustee tries to circumvent the problems raised in Section III.B above by arguing that the $2 million was never LPG's to give away in the first place, then Count I would also fail for lack of standing as discussed in this Section III.C. *See* Amended Complaint ¶ 143.

**D.      The Court Must Dismiss Counts V and VI Because There Is No Cause of Action for "Deepening Insolvency"**

The Trustee's final two claims are for "deepening insolvency" and aiding and abetting "deepening insolvency." Amended Complaint ¶¶ 186-203. But courts in this Circuit routinely hold that there is no claim for "deepening insolvency." *See, e.g.*, *In re ECS Refining, Inc.*, 625 B.R. 425, 448 (Bankr. E.D. Cal. 2020) (stating that there is no "independent cause of action" for "deepening insolvency"); *In re Hoku Corp.*, 554 B.R. 901, 915 (Bankr. D. Idaho 2016) (same). Accordingly, the Court should dismiss Counts V and VI.

**Conclusion**

The Court should grant the Motion and compel arbitration of the Trustee's claims. In the alternative, if arbitration is not compelled, the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction. In the further alternative, if arbitration is not compelled and the Court finds it has jurisdiction over these claims, the claims should be dismissed with prejudice for failure to state a claim.

DATED: March 16, 2026                    Respectfully submitted,


By   */s/ Razmig Y. Izakelian*
       Harry A. Olivar, Jr.
       Jeremy D. Andersen
       Razmig Y. Izakelian

       *Attorneys for OHP-CDR, LP, Old Hickory Fund I GP, LLC, Old Hickory Fund I GP, LP, Purchase Co80, LLC, Adam Blum, and Daniel Young*

-23-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): Notice of Motion and Motion to Compel
Arbitration or, in the Alternative, to Dismiss the Amended Complaint _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
03/16/2026_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __03/16/2026____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.
Yosina M. Lissebeck
Dinsmore & Shohl LLP
655 W Broadway, Suite 800
San Diego, CA 92101

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __03/16/2026____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
The Honorable Scott C. Clarkson
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/16/2026 | Razmig Izakelian | /s/ Razmig Izakelian |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Christopher Celentino on behalf of Plaintiff Richard A Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A Marshack
christopher.ghio@dinsmore.com, bonnie.connolly@dinsmore.com

Brandon J. Iskander on behalf of Interested Party Courtesy NEF
biskander@goeforlaw.com, kmurphy@goeforlaw.com;jfountain@goeforlaw.com

Yosina M Lissebeck on behalf of Plaintiff Richard A Marshack
Yosina.Lissebeck@Dinsmore.com,
caron.burke@dinsmore.com;linda.dominguez@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Siqin Wang on behalf of Trustee Richard A Marshack (TR)
carol.wang@dinsmore.com